IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

1:24-cv-24084-CMA

ECOM AUTHORITY, LLC,

    Plaintiff,

v.

AMAZON.COM SERVICES, LLC,

    Defendant.

_____/

**Order Granting Plaintiff's Renewed Motion for Preliminary Injunction**

This Cause comes before the Court on Plaintiff Ecom Authority, LLC's Renewed Motion for Preliminary Injunction (the "Motion"). The Court having reviewed the Motion, the exhibits thereto, Plaintiff's Verified Complaint [D.E. 1], and being otherwise advised in the premises, the Court hereby enters the following **Findings and Conclusions of Law,** and **Order**:

**Findings and Conclusions of Law**

1.  To grant a temporary injunction, a movant must demonstrate: (1) a substantial likelihood of success on the merits, (2) irreparable harm if the injunction is not granted, (3) that the balance of equities favors the movant, and (4) that the injunction is not adverse to the public interest. *Davidoff & Cie, S.A. v. PLD Int'l Corp*., 263 F.3d 1297, 1300 (11th Cir. 2001). In this case, the Court finds that Plaintiff Ecom Authority, LLC ("EA"), has sufficiently met these elements.

2.  Beginning with the **first element**, "'[a] substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain* success.'" *Melendez v. Sec'y, Fla. Dep't of Corr*., No. 21-13455, 2022 U.S. App. LEXIS 10263, at *31 (11th Cir. Apr. 15,

1

2022) (quoting *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1298 (11th Cir. 2005)) (emphasis in original). EA has shown a showing of substantial likelihood of success on the merits, of its breach of contract claim in Count 1 of its Verified Complaint. To succeed on a breach of contract claim under Florida law, a plaintiff must establish the existence of a valid contract, a material breach of that contract, and damages resulting from the breach. *See Renia v. Curtis Protective Servs.*, No. 6:19-cv-1724-CEM-DCI, 2022 U.S. Dist. LEXIS 93557, at *14 (M.D. Fla. Mar. 7, 2022).

   3. The sworn statements in the Verified Complaint [D.E.1] and the Declaration of Daniel Cohen (attached as Exhibit 1 to the Motion ("Cohen Dec.")), EA's sole owner and member, support the following: EA and Defendant Amazon.com Services, LLC ("Amazon") entered into a valid and enforceable Service Provider Network Agreement (attached as Exhibit 3 to the Motion ("SPN Agreement")). *See* D.E. 1, ¶¶10, 50, 63. The SPN Agreement permits EA to act as a vetted member of Amazon's Service Provider Network and to use Amazon's SPN logo as a designation of trustworthiness and compliance. SPN Agreement; D.E. 1, ¶64. The SPN Agreement in its first paragraph provides that Amazon will provide a directory service which "[e]nables third-party service providers [such as EA] to make information about their services available to third party sellers [e.g. Amazon store owners] on Amazon." SPN Agreement; D.E. 1, ¶53. Moreover, Section 9 of the SPN Agreement specifically provides that:

> Amazon grants to [EA] a non-exclusive, non-transferable, non-assignable, non-sublicensable, and revocable license to use the Amazon Service Provider Network logo . . . once in the body of a single web page promoting [EA's] services to Amazon Sellers.

SPN Agreement, §9.

   4. The sworn statements in the Verified Complaint and the Declaration of Daniel Cohen support that EA complied with all requirements under the SPN Agreement, and upon

request from Amazon, EA provided requested documentation to verify accounts, submitted vendor information, and otherwise followed all of Amazon's operational guidelines. Cohen Dec., ¶¶16, 32; D.E. 1, ¶48.

5. The sworn statements in the Verified Complaint and the Declaration of Daniel Cohen further support that Amazon materially breached the SPN Agreement by virtue of the following: Amazon arbitrarily and indiscriminately labeled EA sourced products as inauthentic or counterfeit and has deactivated and/or compromised accounts of EA's clients without an identifiable reason, seized and destroyed EA's client's inventory valued at approximately $766,163 without compensation, and froze funds in these client accounts, thereby impeding EA's ability to operate as a service provider on Amazon's platform. Cohen Dec., ¶¶13-24; D.E. 1, ¶28. Amazon has offered no clear explanation of the basis for its account deactivation, account freezing, or inventory destruction policies or its claims, or any evidence that the products being sourced by EA are illegitimate or improper in any way. Cohen Dec., ¶¶19, 31.

6. The sworn statements in the Verified Complaint and the Declaration of Daniel Cohen support that, as a result of Amazon's breach, EA has suffered significant and ongoing damages. Cohen Dec., ¶¶ 27-30 D.E. 1, ¶¶34-42. Amazon's policies have incorrectly led to at least 595 EA client seller accounts being compromised, which falsely implies that EA is involved in unprofessional or fraudulent conduct, which in turn has led to the erosion of trust between EA and its clients, many of whom rely on the Amazon SPN Mark as an assurance of EA's status. Cohen Dec., ¶13; D.E. 1, ¶58. As such, Amazon's actions have caused reputational harm to EA, damaging its relationships with its clients, who relied on EA to manage their Amazon accounts effectively. Cohen Dec., ¶¶33-35; D.E. 1, ¶¶27, 30-33. Damages also include the substantial operational costs EA has incurred in attempting to rectify the wrongful deactivations, such as hiring third-party

appeals specialists and engaging in fruitless correspondence with Amazon's ineffective support services. Cohen Dec., ¶¶24, 27. Many of these accounts were generating six-figure revenues, and the resulting deactivations have led to millions of dollars in lost income for both EA and its clients, severely impacting EA's business. *Id.* at ¶¶25-30; D.E. 1, ¶19.

7. EA has accordingly demonstrated a substantial likelihood of success on the merits of its breach of contract claim. The Verified Complaint and the Declaration of Daniel Cohen support that (1) the SPN Agreement is a valid contract, (2) Amazon materially breached this contract by deactivating accounts and destroying inventory without a valid justification, and (3) EA has incurred damages, including lost revenue, significant harm to its client relationships, and reputational damage.

8. Additionally, EA demonstrates a substantial likelihood of success on its claim for breach of the covenant of good faith and fair dealing in Count 2. "The duty of good faith extends beyond the written words of the contract." *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 873 (11th Cir. 2023) (citations and quotations omitted). "[A] party may breach the covenant of good faith and fair dealing by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Id* (citations and quotations omitted). Applying this principle, a court must look to the "reasonably expected benefits" of the agreement to determine whether one party's actions have unfairly frustrated the other party of the intended benefits. *Id* (quotations and citations omitted).

9. The Verified Complaint and the Declaration of Daniel Cohen support that Amazon's arbitrary actions in deactivating EA's clients' accounts and failing to provide adequate explanation for doing so have frustrated EA's ability to perform its obligations under the SPN Agreement and have severely impacted its client relationships. Cohen Dec., ¶¶31-39; D.E. 1, ¶¶62-68. These

4

actions sworn to in the Verified Complaint and the Declaration of Daniel Cohen, contravene the core purpose of the SPN Agreement by preventing EA from carrying out its duties and enjoying the benefits of its contractual role as a member of Amazon's Service Provider Network. The reasonably expected benefits of the SPN Agreement between EA and Amazon included EA's ability to operate as a designated member of Amazon's SPN, utilize the SPN Mark to signal legitimacy to EA's clients, and manage its clients' seller accounts.

> Amazon grants to [EA] a non-exclusive, non-transferable, non-assignable, non-sublicensable, and revocable license to use the Amazon Service Provider Network logo . . . once in the body of a single web page promoting [EA's] services to Amazon Sellers.

SPN Agreement, §9; *see also* D.E. 1, ¶¶62-68. The SPN Mark was a critical tool for EA to demonstrate its trusted status to both its clients and the broader Amazon marketplace. D.E. 1, ¶¶62-68.

10. The Verified Complaint and the Declaration of Daniel Cohen further support that Amazon breached the implied covenant of good faith and fair dealing by arbitrarily deactivating hundreds of EA's clients' seller accounts, without justification and in contradiction of EA's reasonable expectations under the SPN Agreement. Cohen Dec., ¶¶ 13-24; D.E. 1, ¶¶62-68. These deactivations deprived EA of its ability to perform its obligations under the SPN Agreement, damaged its reputation, and significantly undermined the value of the SPN Mark. Cohen Dec., ¶¶ 31-39; D.E. 1, ¶¶62-68. Amazon's actions, while not expressly prohibited by the terms of the SPN Agreement, bore adversely on EA's "reasonably expected benefits of the bargain," as EA had every right to expect that it would continue to operate as a legitimate member of the SPN so long as it complied with Amazon's guidelines, which it did. SPN Agreement, ¶9; D.E. 1, ¶¶62-68.

11. The Verified Complaint and the Declaration of Daniel Cohen further support that, as a result of Amazon's breach of the covenant of good faith and fair dealing, EA has suffered

significant damages, including but not limited to: (1) the loss of income and business opportunities from deactivated accounts, many of which had established six-figure revenues; (2) reputational harm, which has damaged EA's standing with its clients and diminished its goodwill; and (3) the substantial operational costs incurred in attempting to resolve Amazon's unjustified deactivations. Cohen Dec., ¶¶ 27-29; D.E. 1, ¶68.

12. In support of a preliminary injunction, the movant need not prove the case in full but must demonstrate substantial grounds for success on the merits of at least one claim. *Boggs Contracting, Inc. v. Freismuth*, No. 6:21-cv-2088- CEM-EJK, 2021 U.S. Dist. LEXIS 252335, at *5 (M.D. Fla. Dec. 27, 2021) ("When plaintiffs assert multiple claims as a basis for a preliminary injunction, they 'need only establish a substantial likelihood of success on one claim.'") (citing and quoting *Freedom Med., Inc. v. Sewpersaud*, 469 F. Supp. 3d 1269, (M.D. Fla. 2020) (other citations omitted). EA has therefore exceeded its initial burden for the first element by showing a substantial likelihood of success on three of its claims, *i.e.* for breach of contract (Count 1), breach of the covenant of good faith and fair dealing (Count 2), and breach of a third-party beneficiary contract (Count 3)

13. EA has also demonstrated the **second element**, that it will suffer irreparable harm if the injunction is not granted. Irreparable harm occurs when the injury cannot be adequately remedied by monetary damages alone. *See Reynolds v. Roberts*, 207 F.3d 1288, 1299 (11th Cir. 2000) ("A court enters a preliminary injunction to prevent the plaintiff from being injured, and where there is no adequate remedy at law") (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959)).

14. As described in the Verified Complaint and Declaration of Daniel Cohen, the ongoing damage to EA's reputation, loss of goodwill, and disruption to its client relationships

constitute harms that cannot be adequately compensated by monetary damages alone. Cohen Dec., ¶¶31-39; D.E. 1, ¶¶30-33,61. Courts recognize that damage to a business's reputation and loss of goodwill are forms of irreparable harm, as they represent intangible assets critical to sustaining customer relationships and market presence. *See Fortiline, Inc. v. Moody*, No. 12-CV-81271, 2013 U.S. Dist. LEXIS 200015, at *14 (S.D. Fla. Jan. 3, 2013); *Mainsail Parent, LLC v. Jewell*, No. 24-22875-CIV-ALTONAGA/Reid, 2024 U.S. Dist. LEXIS 152480, at *11 (S.D. Fla. Aug. 26, 2024); *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 780 (11th Cir. 2015).

15. Moreover, EA's lost business opportunities also constitute an irreparable harm which a simple money award would not remedy. *See Socket Sols., LLC v. Imp. Glob., LLC*, No. 1:23-cv-24517-DSL, 2024 U.S. Dist. LEXIS 162489, at *29 (S.D. Fla. Sep. 9, 2024) ("Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (citations and quotations omitted); D.E. 1, ¶61.

16. The sworn statements in the Verified Complaint and Declaration of Daniel Cohen support the following: The nature of EA's business as an e-commerce management company relies heavily on its credibility and trusted status, especially as a specially designated member of Amazon's Service Provider Network. Cohen Dec., ¶6; D.E. 1, ¶64. Amazon's actions, including the deactivation of EA's clients' accounts and destruction of inventory, are causing reputational harm and client dissatisfaction that threaten EA's survival in the marketplace. Cohen Dec., ¶¶31-39 D.E. 1, ¶61. Each day that EA's clients remain locked out of their accounts and deprived of inventory, EA suffers further harm to its reputation and client relationships, creating a cascading effect on its business operations that monetary compensation cannot adequately address. Cohen Dec., ¶¶ 33-35; D.E. 1, ¶42. This disruption to EA's business opportunities constitutes irreparable harm because it affects EA's long-term ability to operate effectively and to grow. Losses of this

nature are difficult, if not impossible, to quantify in money terms, as they directly impact EA's core business model and relationships. Cohen Dec., ¶¶31-39; D.E. 1, ¶42.

17. EA has also satisfied the **third element**, showing that the balance of equities favors granting the injunction. Courts consider the balance of equities by weighing the harm the movant would suffer without an injunction against the potential harm to the nonmovant if the injunction is granted. *See Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001). An injunction is appropriate when the harm to the movant without relief outweighs any potential inconvenience or harm to the opposing party, especially when the nonmovant's operations are not substantially disrupted. *See Id*.

18. The sworn statements in the Verified Complaint and Declaration of Daniel Cohen support the following: EA faces significant and irreparable harm if Amazon's deactivation of client accounts and disposal of inventory continues. D.E. 1, ¶¶34-42. Amazon's actions jeopardize EA's core business operations, diminish its clients' trust, and erode EA's goodwill and reputation in ways that cannot be adequately addressed by monetary damages alone. Cohen Dec., ¶¶31-39; D.E. 1, ¶¶34-42. Without the injunction, EA risks further loss of business opportunities, revenue, and client relationships, potentially compromising its long-term viability. Cohen Dec., ¶39; D.E. 1, ¶¶34-42.

19. In contrast, the potential harm to Amazon from an injunction is minimal. An order temporarily reinstating EA's clients' accounts and halting further inventory disposal would merely require Amazon to comply with existing contractual obligations and temporarily maintain the status quo. Amazon, as a globally recognized corporation with vast resources, faces little to no risk of financial or operational instability from such an order. The requested relief should not interfere with Amazon's ongoing business operations or impose any undue burden. Accordingly, the

balance of equities strongly favors EA, as the harm it faces without an injunction significantly outweighs any inconvenience to Amazon.

20. EA has likewise demonstrated that the **fourth element** favors granting the injunction, as it would not be adverse to the public interest. *See Sapphire Consulting Servs. LLC v. Anderson*, No. 6:20-cv-1724-CEM-LRH, 2021 U.S. Dist. LEXIS 54101, at *15 (M.D. Fla. Feb. 12, 2021) ("If issued, a preliminary injunction must not be adverse to the public interest").

21. Here, after evaluating the claims in the Verified Complaint and the testimony in the Declaration of Daniel Cohen, granting the injunction serves the public interest by promoting fair business practices and holding Amazon accountable to its contractual obligations. The public has a vested interest in maintaining a balanced marketplace where businesses can rely on fair treatment from larger platforms on which they operate. By requiring Amazon to restore EA's clients' accounts and halt further arbitrary deactivations, the injunction helps to preserve a competitive market and protect smaller businesses from potentially damaging unilateral actions by dominant corporations. *See Winmark Corp. v. Brenoby Sports, Inc.*, 32 F. Supp. 3d 1206, 1224 (S.D. Fla. 2014) (holding enforcement of contract an interest in favor of public policy).

22. This relief would not harm the public interest or Amazon's legitimate operations. Instead, it would uphold the integrity of contractual rights and prevent actions that disrupt EA's ability to fulfill its role as a service provider in the Amazon marketplace. Thus, the injunction supports the public interest in promoting fairness and accountability in business relationships.

23. The Court finds that no bond should be required in this matter. Under Federal Rule of Civil Procedure 65(c), the Court has discretion to require a bond only when the enjoined party would suffer harm as a result of the injunction. Given Amazon's vast resources and the limited impact of the injunction on its operations, the Court concludes that the risk of financial harm or

disruption to Amazon is negligible. The injunction merely restores the status quo, requiring Amazon to reinstate EA's clients' accounts and halt inventory disposals without imposing any undue burden on Amazon's business. Accordingly, the Court exercises its discretion to require no bond in connection with this order.

24. Finally, notice of the Motion has been provided to Defendant Amazon, as reflected in the Certificate of Service in the Motion. Moreover, the Verified Complaint was served on Amazon on October 24, 2024. [D.E. 11].

## Order

Based on the above findings and conclusions, it is hereby **Ordered** and **Adjudged** that:

1. Plaintiff Ecom Authority, LLC's Motion for Temporary Injunction is **Granted**.

2. Defendant Amazon.com Services, LLC is hereby enjoined from: (1) deactivating any of EA's clients' accounts without substantiated cause; (2) freezing, disposing of, or destroying any inventory associated with EA's clients' accounts; and (3) engaging in any actions that would further impair EA's rights or hinder its performance under the SPN Agreement.

3. Amazon is ordered to reinstate access to all of EA's clients' accounts affected by the actions described above and in the Verified Complaint and to preserve all inventory associated with these accounts until further order of the Court.

4. The Court finds that no bond/bond in the amount of $_____ is required in this matter due to the minimal impact on Amazon's operations, as detailed above.

**Done and Ordered** in the U.S. District Court for the Southern District of Florida on this \_\_\_\_ day of _____, 2025.

_____
United States District Court Judge